

Gregory Smith; Brianna Smith

9060 West Myrtle Avenue

Glendale, AZ 85305

(480) 233-6429

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

GREGORY SMITH

BRIANNA SMITH

Plaintiffs

Case Number: 2:20-cv-00713 SPL

**PLAINTIFFS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

v.

DAVID KIMMERLE-CEO

SANDERSON FORD, INC.

Defendants

COMES NOW, Plaintiffs Gregory Smith and Ms. Brianna Smith ("Plaintiffs") on behalf of themselves and hereby responds to Defendants Motion for Dismissal of this case. Plaintiffs oppose the Motion.

Plaintiff Gregory Smith (Mr. Smith) is disabled with Obsessive-Compulsive Disorder (OCD) and Diastolic Dysfunction [Doc. 14, *Id.* at #4]. Plaintiff Brianna Smith (Ms. Smith) is disabled with Attention Deficit Hyperactivity Disorder (ADHD), (OCD) and tachycardia. [Doc. 14, *Id.* #5]. Both Plaintiffs have been receiving SSDI Benefits (from SSA) for over 10 years.

1

## INTRODUCTION

The Defendants employees and agents discriminated against the Plaintiffs when they failed to accommodate Mr. Smith's disabilities by (1) not allowing Mr. Smith to pick up the Plaintiffs special ordered Ford F150 from the railyard on February 19, 2018 as was promised by the Defendants, (G.M.) Mark Witthar on November 11, 2017 [Doc.14, *Id*. at #10], (2) refusing to rent a brand-new vehicle to Mr. Smith that was promised to Mr. Smith by Witthar on March 07, 2018 [Doc.14, *Id*. at #17], and (3) refusing to sell 2 different special ordered 2018 Ford F150 lariats to the Plaintiffs because of their disabilities. [Doc.14, *Id*. at #26 and #28]. (Exhibit Email # 2 on April 12, 2018).

If, the Defendants had accommodated Mr. Smith by allowing Mr. Smith to pick up the Plaintiffs 1st 2018 Ford F150 at the railyard then there would be no need to order the 2nd Ford F150. Furthermore, the Defendants (G.M.) Witthar was not accommodating with the 2nd Ford F150 either because **on April 12, 2018,** Witthar told Mr. Smith to go to another dealer to purchase his new vehicle.

Mr. Smith did not demand a brand-new vehicle. [Doc. 14, *Id* at #17). On March 07, 2018 **(in recording)** Witthar told Mr. Smith that it was their fault that Smiths 2018 Ford F150 had been delivered to the dealership. Then Witthar promised Mr. Smith that he would rent him a brand-new 2018 Ford F150, until Smiths 2nd 2018 Ford F150 arrived from the manufacture. On March 13, 2018 Gilbert told Mr. Smith that he was difficult to deal with. Mr. Smith said what is that suppose to mean? I am not difficult to deal with I got a lung breathing problem you know. Then Gilbert states, "Nope you're

not difficult to deal with you've been straight forward from the get-go and letting us know what we're dealing with." **(recorded conversation).**

## THE DEFENDANTS AND MS. KINGSLEY HAVE BEEN DISHONEST IN THEIR MOTION TO DISMISS

1. First, it is very important that the court needs to know that the Defendants Attorney Ms. Kingsley has been dishonest and deceptive to the court. Mr. Smith's heart problem is called Diastolic Dysfunction. [Doc.14, *Id.* at #4]. Ms. Kingsley had deliberately excluded Mr. Smith's Diastolic Dysfunction 4 different times but mentions Mr. Smith's OCD all 4 times in the Motion to Dismiss. [Doc. 19, *Id at* pages 1-4]. Mr. Smith's OCD does not cause his shortness of breath but his Diastolic Dysfunction of the heart does. [Doc.14, *Id at* #4,10]. This paragraph just below is ONLY 1 out of the 4 different times to where Mr. Smith's Diastolic Dysfunction was left out to deceive the court. Ms. Kingsley should be sanctioned by the court for being dishonest, unethical, withholding information from the court and not telling the truth in her emails and her Motion to Dismiss. The Plaintiffs have already experienced her unethical behavior 3 different times towards them. Maybe it's because the Plaintiffs are Prose.

Ms. Kingsley stated, "Plaintiffs' First Amended Complaint [Doc. 14], however, does not draw any connection between Plaintiffs' "lung breath problem" that hinders him from smelling any chemical and fragrances and Mr. Smith's OCD disability and Ms. Smith's OCD, ADHD, and tachycardia. [See Doc. 14]". Ms. Kingsley deliberately left out Mr. Smith's Diastolic Dysfunction. [Doc. 19, *Id* at page 4]. [Doc. 14, *Id.* at #4].

On November 11, 2017 Mr. Smith explained to GM Witthar that he cannot smell any chemicals and fragrances because of his lung breathing problem due to his heart condition. [Doc. 14, *Id* at #10].

3

2. There is a major problem with [Doc. #19]. Unfortunately, the Plaintiffs can only give the page number and not the line numbers on the left side of each page. This is because it seems that Ms. Kingsley deliberately made the sentences to not align with the numbers 1-26 on the left side of the page. [Doc. #19]. This was done so that the Plaintiffs cannot accurately [*Id*] the line numbers and this was deceptive. So, therefore Plaintiffs will only be able to list the page numbers in their opposition. The sentences and the line numbers align up in the Judge Logans order on November 24, 2020 so they can be exactly identified. [Doc. #22].

3. The Defendants employees and agents have been dishonest and deceptive by deliberately withholding the last discriminatory email in the Motion to Dismiss. That email was sent to Mr. Smith's email address from Defendants (G.M.) Whittar **on April 12, 2018**. In email Witthar states, "As I said in my last note to you. You need to find another dealer for your new vehicle needs." (Exhibit # 2 Email on April 12, 2018). **April 12, 2018** makes the last date of discrimination and twice now that Witthar had told Mr. Smith to go to another dealer for their new vehicle needs. [Doc. 14, *Id. at* #28].

4. The last date of discrimination by Defendants (G.M.) Witthar was not on March 26, 2018 as they claim. [Doc. 19, *Id* page 6-7]. This was done purposely to deceive the court by saying that the Plaintiffs missed the statute of limitations, when in fact the Plaintiffs original complaint was filed 2 days before the statute of limitations ran out on **April 12, 2020**. This dishonesty and deception would interfere with the Judges decision in the ruling on the Motion to Dismiss and is not fair to the Plaintiffs. Ms. Kingsley took an oath as an Attorney to uphold the laws and not break them. This was all done intentionally against the Plaintiffs. Furthermore, the Defendants Attorney Ms. Kingsley failed to mail the Motion to

4

Dismiss to the Plaintiffs as required by the F.R.C.P. Rule 5 (a) (1) (D); (b) (C).

## THE FACTS OF THE CIVIL CASE

The facts and allegations are true in the Plaintiffs Amended Complaint. The Plaintiffs have been unlawfully harmed because of the Defendants employees and agents discriminatory actions. The evidence must be viewed in the light most favorable to the non-movant party. When a party opposes the motion to dismiss the opposing party "is to be given the benefit of all reasonable doubts in determining whether the facts of the case are true and all reasonable inferences are to be construed in favor of the opposing party." The Plaintiffs have taped audio recordings with the Defendants employees and agents by phone, in-person and emails that prove that the Defendants employees and agents intentionally discriminated against them. This will be entered into evidence in discovery. The facts are true in the background below [Doc14, *Id.* #10-28].

## BACKGROUND

10. On or about November 11, 2017, Mr. Gregory Smith called Witthar about special ordering a 2018 Ford F150 Lariat. Smith informed Witthar that he had disabilities and that he had to pick up his Ford F150 at the railyard when it arrives from the manufacture to make sure that the Plaintiffs Ford F150 does not get detailed. Mr. Smith explained that he cannot smell any chemicals and fragrances because of his lung breathing problem due to his heart condition. Mr. Smith also informed Witthar that he also has another disability. Witthar agreed that Smith could pick up his Ford F150 at the rail

yard when it arrives. Smith placed the special order.

11. On February 3, 2018 Defendants employee and agent Gilbert (Sales and Leasing Employee) called Smith to inform him that his Ford F150 had arrived at the railyard in El Mirage, Arizona. It was scheduled to be picked up at the railyard on February 12, 2018. Mr. Smith was told that they must go in order of which the vehicles were received at the railyard from the manufacturer.

12. On February 12, 2018 Mr. Smith received a text from Gilbert to confirm the appointment. Smith informed Gilbert that he was laid up in bed due to his health problems. Smith was sick from February 12, 2018 through February 16, 2018 all the while staying in touch with Gilbert daily.

13. On February 15, 2018 Mr. Smith texted Mr. Gilbert and told him that he was still sick but to let the rail yard know that he would definitely pick up the Ford F150 on the afternoon of Monday February 19, 2018. Gilbert informed Smith that the railyard is closed on weekends.

14. On February 16, 2018 Smiths Ford F150 was wrongfully delivered to the dealership at night after Gilbert had left work for the day. The Defendants employees and agents all failed to accommodate Smith by allowing him to pick up the Plaintiffs 1st special ordered Ford F150 at the railyard to ensure that the vehicle would not get detailed. This was because they had never once contacted the railyard. Gilbert had boasted about his great relationship with the rail yard but yet the railyard delivered the Plaintiffs Ford F150 to the dealership behind Gilberts back. The Plaintiffs were unable to purchase the Ford F150 that they had waited 12 long weeks for because it was wrongfully delivered to the dealership and detailed. Witthar had promised Smith (before Smith ever placed the special order) that Smith could pick up the Ford F150 at the railyard when it arrived.

15.  Mr. Smith did not find out about the Plaintiffs Ford F150 being wrongfully delivered, until February 19, 2018.  Smith texted Gilbert to let him know that he was ready to meet at the railyard to pick up his Ford F150.  Gilbert informed Mr. Smith that his Ford F150 had been delivered on February 16, 2018 after he had left work. Gilbert said it was his fault and agreed to special order Mr. Smith another 2018 Ford F150 and that it would take another 12 weeks to arrive from the manufacture. Defendants employees and agents ONLY ordered the 2nd 2018 Ford F150 because they knew no matter what that the Ford F150 would sell to somebody quickly because it was a hot seller.

16.  On March 07, 2018 Mr. Smith called Witthar to rent a brand-new Ford F150.  Most all dealerships rent vehicles to customers as part of their services and to make an profit. Witthar told Smith that it was their fault that the Mr. Smith's Ford F150 had been delivered via semi to the dealership, which means Witthar had also failed to accommodate Smith by allowing the plaintiffs to pick up the Ford F150 at the railyard.

17.  On March 07, 2018 Witthar promised Smith that he would put him in the brand-new 1st Ford F150 (that Smith special ordered and was wrongfully delivered) to rent while he was waiting for his 2nd Ford F150 to arrive in May of 2018. Furthermore, Witthar told Smith, if the 1st Ford F150 had been sold that he would put him in another brand-new Ford F150.  Mr. Smith informed Witthar that he could rent the 1st Ford F150 he had special ordered but he could not purchase it because it was only to be used temporarily, until Smiths 2nd Ford F150 arrived at the railyard.  Mr. Smith informed Witthar that he had not known what had happened to the 1st Ford F150 once it was delivered to the dealership and that is why the Plaintiffs could not purchase it.  Witthar said two different times that he understood why

7

Smith could not purchase the 1st Ford F150. Witthar promised Smith that he would call him the following day to set up the brand-new rental Ford F150. Brand-new truck means no more than 10 miles on it.

18. On March 08, 2018 Smith called Witthar but his secretary Schonfelder informed him that Witthar would be away from work for a week. Mr. Smith asked for the cell number of Witthar but she refused to give it to Smith. Witthar had failed to accommodate Smith with the brand-new rental Ford F150 as he had promised the day before.

19. On March 08, 2018 Smith called Gilbert to tell him that he was promised a brand-new truck by Witthar the day before and that he was ready to rent it. Then Gilbert told Smith that they could pull a brand-new Ford F150 from the dealer lot, but they would prefer to pull something that has sat on the lot 6 months or longer because it was a win/win situation for them. Smith informed him again that he was disabled and that he needed the brand-new rental as promised by Witthar as a accommodation. Gilbert then failed to accommodate Smith with the brand-new rental that was promised by Witthar to Smith the day before.

20. On March 08, 2018 Smith then called Gilberts manager Clifton. Smith informed Clifton (New Vehicle Manager) that Witthar had promised him an brand new Ford F150 rental, until his 2nd Ford arrived at the railyard. Smith then informed Clifton again that he is disabled and that he needed to be accommodated, and that it was their fault that his Ford F150 was wrongfully delivered to the dealership. Clifton told Smith that he was instructed by Witthar that they were not going to rent Smith the brand-new Ford F150 and that they were not going to rent him any vehicle with low miles. The Defendants employees and agents were discriminating against the

8

Plaintiffs and delaying the rental truck. Clifton made the 3rd employee and agent of Defendants that had failed to accommodate Smith with a brand new rental, until his 2nd Ford F150 arrived.

21. On March 13, 2018 Gilbert finally called Mr. Smith to inform him that they have a very specific Ford F150 for Smith to rent. Then Gilbert said he was very busy, and it would be a few days, until he could deliver it to Smith's house. Gilbert promised Smith, if this Ford F150 does not work out for him then he would keep bringing more Ford F150s to his house to see, if they would accommodate Smith's disabilities. Mr. Smith found out later that Gilbert intentionally brought Smith this specific Ford F150 out of meanness and for Sanderson's financial gain. This rental Ford F150 was an year old and it had many people in and out of this truck. Gilbert found the oldest and worst Ford F150 to try and rent to Smith and it was not an accommodation for Smith's disabilities but rather to harm him. There was over 150 brand new Ford F150s that the Defendants employees and agents could have rented to Smith at the time, but Gilbert only brought the one that did not accommodate Smith. If, the Defendants employees and agents were accommodating Smith then they would of allowed the Plaintiffs to visit the dealership to pick from a group of Fords F150s that would accommodate Mr. Smith.

22. On March 16, 2018 Gilbert showed up at Smith's house around 7pm. Gilbert was hostile towards Mr. Smith and Ms. Smith. Mr. Smith and his daughter Ms. Smith had smelled inside the rental Ford F150 cab and the awful smell took Mr. Smith's breath away because the smell was intolerable. Smith then informed Gilbert that he cannot rent this Ford F150 and asked him to bring other vehicles as he had promised Mr. Smith on March 13, 2018 by Gilbert. Gilbert did not deny the awful smell. Mr. Smith told Gilbert that

under the ADA Law he Must be accommodated. Gilbert informed Smith that he was very aware of the ADA Laws. Gilbert discriminated against Smith when he failed to accommodate him by going back to the dealer to bring more vehicles to see, if they would accommodate Smith's disabilities. Ms. Smith informed Gilbert that Witthar had promised Smith a brand-new Ford F150 to rent. Gilbert told Ms. Smith that Witthar had not told Mr. Smith that. Then Ms. Smith informed him that the Plaintiffs have proof of this. Gilbert then states, "perfect then you have proof you get your lawyers involved and everything like that and, and, and we'll work with that problem." Gilbert left Smith's house angry and never returned with any other vehicles.

23.   On Monday, March 19, 2018 Smith called Witthar to tell him about Gilberts hostile behavior and failing to accommodate him with an rental vehicle. Schonfelder (secretary) told Smith that Mr. Witthar was not available. Mr. Smith then asked for Witthars email address.

24.   On Wednesday, March 21, 2018 Mr. Smith sent an email to Witthar explaining Gilberts bad attitude and failure to accommodate him with a Ford F150 or any brand-new vehicle.

25.   On March 24, 2018 Smith sends Witthar another email telling him that he had been trying to reach him. Smith told him that he needed a rental vehicle as soon as possible and that he should have gotten the rental vehicle on March 16, 2018. (Exhibit Email #1).

26.   On March 26, 2018 Witthar sent Smith an discriminatory email telling Smith to go to another dealership for his vehicle needs. (Exhibit Email #1).

27.   **On April 12, 2018** Smith sent an email informing Witthar once again

about his severe OCD and lung breathing problem and how it is against the ADA Laws to refuse to rent and sell to a disabled customer. (Exhibit Email #2). The letter attached to this email was titled "My other disability".

28. **On April 12, 2018** Mr. Witthar sent Smith an email. Witthar states, "as I said in my last note to you. You need to find another dealer for your new vehicle needs." Witthar had 2 different opportunities to accommodate Smith but he chose to discriminate against Smith by refusing to rent and to sell to Mr. Smith and Ms. Smith. (Exhibit, Email #2).

## DEFENDANTS ARGUE THAT THE COMPLAINT WAS NOT FILED BY THE STATUTE OF LIMITATIONS

1. The Defendants argues in the motion to dismiss that the Plaintiffs did not meet the statute of limitations to file the Original Complaint, so this case is time barred. The statute of limitations in this case was **April 12, 2020.** The Plaintiffs filed the Complaint with the court on April 10, 2020, which was 2 days before the statute of limitations ran out and is **NOT timed barred.** [Doc. #1]. The Defendants attorney Ms. Kingsley sent the Plaintiffs 2 different emails. Ms. Kingsley states in email," no attempt to amend can provide a cure." So, Judge Logan's decision to dismiss the Original Complaint and allow the Plaintiffs to amend is no good in her eyes because she claims that the Amended Complaint was time barred.

2. On March 26, 2018, Mr. Smith explains that Witthar had sent Mr. Smith an discriminatory email Telling Mr. Smith to go to another dealership for his vehicle needs. (Exhibit, Email #1). That was the 1st discriminatory email [Doc.14, *Id.* # 26]. The Defendants claim that this was the last date of discrimination when in fact the last date was on April 12, 2018. [Doc. 14, page 10, #28]. (Exhibit, Email #2).

3. Mr. Smith has been having restless nights and cannot sleep due to **(IIED)** that was placed on him by the Defendants employees and agents. On **April**

11

**12, 2018 at 3:00 am**, Mr. Smith had sent an email (and a letter attached titled "My Other Disability") to Witthar. The Subject in the email was "URGENT NEED CALL BY **April 12, 2018**". In the letter Mr. Smith explained to Witthar again about his breathing problem due to his heart condition. Mr. Smith also explained in detail about his severe OCD. Mr. Smith told Witthar how it is against the ADA Laws for Witthar to refuse to rent and sell to the Plaintiffs because of their disabilities. Mr. Smith told Witthar that he must be accommodated with a rental vehicle ASAP. Mr. Smith informed Witthar that he must be accommodated by the ADA Laws and that it is not a choice, but they must abide by those Laws.

4. Witthar responded back to Mr. Smith but not in an phone call as Mr. Smith wanted. Instead, **On April 12, 2018 at 2:00 pm,** Witthar sends the 2nd and last discriminatory email to Mr. Smith. In the email Witthar states, "As I said in my last note to you. You need to find another dealer for your new vehicle needs." [Doc. 14, *Id* at #28]. (Exhibit #2 Email on April 12, 2018). Witthar ignored Mr. Smith's letter "My Other Disability" and instead he chose to discriminate against the Plaintiffs for the 2nd and last time by email. The Plaintiff's Original Complaint was filed on April 10, 2020, which was 2 days before the statute of limitations ran out. [Doc. #1]. On July 08, 2020 Judge Logan dismissed the Plaintiffs Original Complaint. The Plaintiffs Amended Complaint was filed by deadline of August 07, 2020. [Doc. #14].

## DEFENDANTS ARGUE THAT THE PLAINTIFFS COMPLAINTS AND SUMMONS WAS NOT SERVED ON ALL OF THE DEFENDANTS BY NOVEMBER 05, 2020

1. The Defendants have contradicting arguments in the Motion to Dismiss. [Doc. 19]. First, the Defendants argues that the Plaintiffs Original Complaint was not filed by the statute of limitations and is time barred, which is false. Then the Defendants contradict that story and now argues

that it was court ordered that all of the Defendants had to be served by November 05, 2020, which is true. So, in other words the Defendants are agreeing that the Original Complaint was filed timely or the Defendants would not be arguing that all of the Defendants were not served by November 05, 2020.

2. The 3 individuals Witthar, Clifton and Gilbert were in the Original Complaint, but they were the ONLY ones dropped as Defendants in the Amended Complaint. [Doc. #14]. These 3 individuals were agents and employees of the Defendants at the time of the discrimination. The Judge Logan set a new due date for the Plaintiffs to serve the Amended Complaint and summons on the Defendants and that was November 05, 2020 [Doc. #16].

3. On November 02, 2020, the complaints and summons was served on time. The Plaintiffs submitted the proof of service to the court in a reasonable amount of time not to mention Mr. Smith's health problems. The law states that the certificate of service must be turned into the court in a reasonable amount of time, in which Plaintiffs have done. F.R.C.P. Rule 5 (d)(1)(A).

## THE DEFENDANTS ARGUE THAT THE PLAINTIFFS DID NOT MEET AND CONFER

1. Plaintiffs recently found out that Parties are expected to "MEET AND CONFER" and that is either to talk by phone or in person. Meet and confer is not by an email chain to where there is an exchange of letters but it is for two people to engage in conversation either in person or by phone so they each can defend themselves and come up with a positive outcome. Ms. Kingsley did not make a Good Faith Consultation to meet and confer with the Plaintiffs as she was going against the A.R.S. § Rule 7.1 (h). The law specifically entails that the meet and confer cannot be by emails. However,

13

Ms. Kingsley is well aware of this rule but instead she chose to break it and tried using intimidating emails trying to get the Plaintiffs to drop the lawsuit.

2. If, the Defendants wanted to resolve this case then they would have offered a money Settlement for the Defendants employees and agents discrimination against the Plaintiffs. Defendants Attorney did not seek a fair resolution with a positive outcome of what the courts prefer but only one that benefits the Defendants and that is for the Plaintiffs to dismiss this case. The Plaintiffs have no intentions of dismissing this case. (Exhibit #3, Emails from Kingsley to Mr. Smith and Ms. Smith on November 13, 2020 and November 18, 2020).

## DEFENDANTS REPLY BRIEF TO MOTION TO DISMISS

If, the Defendants file a reply brief to the Plaintiffs Opposition, they may not add any new evidence that does not relate to what is in the Motion to Dismiss. A reply brief is limited to addressing matters that was presented in the Motion to Dismiss or the Response and not new arguments. It is important to know that specific reasons for a case dismissal must be in the Motion to Dismiss filed with the court otherwise that issue is considered waived. Basically the Defendants whole Motion to Dismiss is about the Plaintiffs missing the statute of limitations in this case. However, the Plaintiffs have proven that they did not miss the statue of limitations.

## THE DEFENDANTS HAD A DUDY TO ACCOMMODATE THE PLAINTIFFS UNDER THE AzDA AND ADA

1. There was an obligation for the Defendants employees and agents to rent a vehicle to the Plaintiffs. The AzDA and ADA are the laws that they must abide by and it is not a choice. The Defendants rent Ford F150s and other vehicles to their non-disabled customers all of the time **(recorded)**. The Defendants employees and agents cannot refuse to rent to Mr. Smith because he is disabled, and he needed an accommodation of a brand-new vehicle to

14

enjoy the service.  Furthermore, it was illegal for them to refuse to sell to the Plaintiffs because they are disabled as Witthar had done on **April 12, 2018.**

2. On March 07, 2018 Witthar promised Mr. Smith that he would put him in a brand new rental 2018 Ford F150 as an accommodation.  Furthermore, On March 13, 2018, Gilbert promised Mr. Smith that he would keep bringing more (Rental Ford F150s), until Mr. Smith found one that would accommodate his lung breathing problem.  On March 16, 2018, Gilbert broke that promise and never accommodated Mr. Smith. **(all 3 conversations were recorded).**

## STATEMENT OF CLAIMS UNDER THE AzDA AND ADA

1. Under the AzDA Law the Defendants employees and agents discriminated against Mr. Smith and Ms. Smith, based on disability, by their failure to make a reasonable modification in their policies, practices or procedures to allow the Plaintiffs to pick up their special ordered 2018 Ford F150 at the railyard as was promised to Smith in November of 2017 by Witthar. This is in violation of A.R.S. § 41-1492.02(f). [Doc.14, *Id* at #35].

2. Defendants employees and agents discriminated against Smith based on disability, by their failure to make a reasonable modification in their policies, practices or procedures to allow Smith to rent a brand-new Ford F150 or any brand-new vehicle from Defendants.  This was promised to Smith by Witthar on March 07, 2018. Furthermore, because of Mr. Smith and Ms. Smith's disabilities, they were denied the sale of 2 different Ford F150s. **On April, 2018,** Witthar told Mr. Smith to find another dealer for his new vehicle needs. This was in violation of A.R.S. § 41~1492.02(f). [Doc.14, *Id* at #36].

3. Under the ADA Laws the Defendants employees and agents, discriminated against Mr. Smith and Ms. Smith, based on disabilities, by their failure to make a reasonable modification in their policies, practices or procedures to allow Plaintiffs to pick up their special ordered 2018 Ford F150 at the railyard and to rent an brand-new vehicle from their business that would accommodate Mr. Smith; and that had been promised to Smith by Witthar. Furthermore, **on April 12, 2018,** (G.M.) Witthar refused to sell 2 different (special ordered) 2018 Ford

15

F150s to the Plaintiffs because they are disabled. [Doc.14, *Id* #43,44]. 42 U.S.C. § 12182(a). The Plaintiffs had waited an total of 5 long months for 2 different vehicles. This placed much unneeded stress on the Plaintiffs. The Plaintiffs would now have to wait another 12 weeks to purchase their 2018 Ford F150 from (another dealer). (Exhibit Email #2).

## CONCLUSION

Based on the above true facts, the Plaintiffs filed their complaint on April 10, 2020, which was 2 days before the statute of limitations ran out and **this case is NOT time barred.** Judge Logan dismissed the Plaintiffs original complaint and the Plaintiffs Amended Complaint was filed on time on August 7, 2020. [14]. On March 16, 2018 The Defendants employee and agent Gilbert admitted to Mr. Smith that he was very familiar with the ADA Laws. However, Gilbert chose to not accommodate Mr. Smith when he refused to go and get more brand-new vehicles at the dealership (as he had promised Mr. Smith on March 13, 2018) to see which one would accommodate Mr. Smith's lung breathing problem. **(recorded).** Furthermore, **April 12, 2018,** Witthar finalized the discrimination and told Mr. Smith to go to another dealer to purchase their new vehicle. **(Exhibit Email # 2).** This case is by no means ripe for a dismissal.

**WHEREFORE,** Plaintiffs Mr. Smith and Ms. Smith respectfully requests this Court to deny the Defendants Motion for Dismissal and whatever other relief the Court deems just and proper.

Dated this 28th day of December 2020    Respectfully Submitted,

Gregory Smith

16

Gregory Smith
9060 West Myrtle Avenue
Glendale, AZ 85305
Prose

_Brianna Smith_

Brianna Smith
9060 West Myrtle Avenue
Glendale, AZ 85305
Prose

RE: I need a vehicle ASAP

Mark Witthar <mwitthar@sandersonford.com>

Mon 3/26/2018 2:48 PM

To: 'greg smith' <gsmith1992@hotmail.com>
Cc: 'Mark Witthar' <mwitthar@sandersonford.com>

Greg,

At this point we believe it is best you find another dealer to take care of your new vehicle needs.

Best Regards,

*Mark Witthar*

General Manager
Sanderson Ford
623-842-8636
mwitthar@sandersonford.com

 logo

From: greg smith <gsmith1992@hotmail.com>
Sent: Saturday, March 24, 2018 10:20 PM
To: Mark (M.B.) Witthar <mwitthar@sandersonford.com>
Subject: I need a vehicle ASAP

mark,

You left me a message on my phone this past Wednesday about my email that I sent to you the day before. In your voicemail you did not mention having a truck that I could pick out but you just said give me a call. As the employees are aware that I have told them numerous times that I have a rare heart problem that affects my breathing. This also makes me very weak at times and I was laid up in bed both this past Wednesday and Thursday and sleeping a lot. I called you yesterday at 12:40 pm and no answer. I then called holly at 1:39 pm and she said that you would get back with me but you never did. I need a vehicle ASAP. I should have gotten the truck with no smell a week ago this past Friday. However, gilbert did not do as he had promised 3 days earlier and bring me another truck that did not smell. I do not need this unneeded stress and paying for a ridiculous overpriced rental car. My phone number is 480 233 6429

Gregory Smith

EXHIBIT #1   EMAIL #1

URGENT NEED CALL BY APRIL 12 2018

greg smith <gsmith1992@hotmail.com>
Thu 4/12/2018 3:00 AM
To: Mark (M.B.) Witthar <mwitthar@sandersonford.com>

📎 1 attachments (34 KB)
My other disability.docx;

EXHIBIT #1  EMAIL #2

RE: URGENT NEED CALL BY APRIL 12 2018

Mark Witthar <mwitthar@sandersonford.com>

Thu 4/12/2018 2:00 PM

To: 'greg smith' <gsmith1992@hotmail.com>
Cc: 'Mark Witthar' <mwitthar@sandersonford.com>

Mr. Smith,

As I said in my last note to you. You need to find another dealer for your new vehicle needs.

Thank you.

*Mark Witthar*

General Manager
Sanderson Ford
623-842-8636
mwitthar@sandersonford.com

logo

---

From: greg smith <gsmith1992@hotmail.com>
Sent: Wednesday, April 11, 2018 8:00 PM
To: Mark (M.B.) Witthar <mwitthar@sandersonford.com>
Subject: URGENT NEED CALL BY APRIL 12 2018

EXHIBIT #1  EMAIL #2

# EXHIBIT #1

# EMAILS

**EMAIL # 1  March 24, 2018**

**EMAIL # 1  March 26, 2018**

**EMAIL # 2  April 12, 2018**

**EMAILS # 3  MEET AND CONFER**

**November 13, 2020**

**November 18, 2020**

1

**Exhibit #3, Emails from Kingsley to Mr. Smith and Ms. Smith on November 13, 2020 and November 18, 2020 listed below.**

The reason that these emails are cut and pasted is because Kingsley typed it in blue ink. Blue ink does not print out very clear so the email was cut and pasted into this document for the court to review. Mr. Smith has this email in his email account history for review.

**Smith et al v. Sanderson Ford Incorporated et al CASE #: 2:20-cv-00713-SPL**
**Meet and Confer - follow up with DEADLINE**

☐
This message was sent with High importance.

PK

Pamela L. Kingsley <plk@tblaw.com>
Wed 11/18/2020 7:58 PM

☐
☐
☐
☐
More actions

To:

• You

Cc:

• Gaya Shanmuganatha;
• Kelley Irish;
• Shari D. Hanger

Mr. and Mrs. Smith,

As parties to the lawsuit you initiated, you have certain obligations. Among them is engaging in communication with your opposing party or parties to further the orderly process of the proceedings. Here, that would be by engaging with me on an as-needed basis.

Right now, my client and I need to know that you received the below message. You may do this by simply hitting reply – and, "yes." If we do not hear from you, we will need to advise

2

EXHIBIT #1    EMAIL #3

the Court that you have refused to engage in the Meet and Confer process required of litigants.

If you plan to respond positively to the message, you need to send a message to that effect IMMEDIATELY. The message should set out your proposal. We believe that your response should be that you agree that the lawsuit should be dismissed and you plan to file a Notice of Dismissal. If you then file the Notice, you and Sanderson Ford will part ways amicably. If you need help in drafting the Notice of Dismissal, we can assist.

If you do not respond positively by noon tomorrow, November 19, 2020, we will proceed with the filing of the motion to dismiss discussed below and Sanderson Ford will seek its attorneys' fees for having to do so.

Pamela L. Kingsley | Shareholder | 602.255.6015
Employment | Commercial and Business Litigation | Appellate

**Smith et al v. Sanderson Ford Incorporated et al CASE #: 2:20-cv-00713-SPL
Meet and Confer - seeking voluntary dismissal**

PK

Pamela L. Kingsley <plk@tblaw.com>
Fri 11/13/2020 10:16 AM

To:

• You

Cc:

- Gaya Shanmuganatha;
- Kelley Irish;
- Shari D. Hanger

Mr. and Mrs. Smith,

My law firm and I represent Sanderson Ford, Inc. with respect to the lawsuit you filed, captioned as *Smith v. David Kimmerle*, 2:20-CV-00713 SPL. Please direct all future communications regarding Sanderson Ford, Inc. to my attention and please do not contact our client in the future.

It is apparent from the allegations in the Complaint filed on August 7, 2020 [14], that any claims you may have are time-barred by the applicable statute of limitations. Therefore, pursuant

3

EXHIBIT #1  EMAIL #3

to Local Rule 12.1(c), we are reaching out to you to meet and confer about this issue in an effort to foreclose the need for Sanderson Ford to move for dismissal of the lawsuit.

Specifically, you have asserted two claims against Sanderson Ford – Violation of the Arizona Disability Act and Violation of the Americans with Disabilities Act. As you are aware, you were required to file any private lawsuit against Sanderson Ford within two years of the date that you knew, or should have known, that you had been harmed. A.R.S. § 41-1492.05; *see also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n. 2 (9th Cir.2002) ("Because the ADA does not contain a statute of limitations, the court must apply the statute of limitations of the most analogous state law.")

With your Wednesday, March 21, 2018 12:23 AM email message to Mr. Witthar, you attached a letter titled, "lawsuit against sanderson ford." In that letter, you informed Mr. Witthar that your claims for the alleged discrimination existed *at least* by March 19, 2018. *Id.* ("I am disabled under the Americans Disability Act (ADA) Laws. I have been discriminated against by the sanderson dealership and for failure to accommodate me.") Thus, you knew by March 19, 2018, of the claimed discrimination.

Therefore, you should have filed your complaint against Sanderson Ford by no later than March 19, 2020. You did not do so. Instead, the only valid complaint was filed on August 7, 2020 – almost five months *after* the statute of limitations had expired. As a result, the 8/7/20 Complaint alleging violations of the Arizona Disability Act and Violation of the Americans with Disabilities Act is time barred. Thus, we are confident we will prevail on a motion to dismiss your time-barred complaint.

Lest you try to take solace in the fact that you filed your initial complaint on April 10, 2020, the two years still had run by March 19, 2020. As if the March 19, 2018 letter were not enough, the language at ¶ 26 of the 8/7/20 Complaint, identifies March 26, 2018, as the date Sanderson Ford allegedly committed the bad act that is your icing on the cake:

> 26.     On March 26, 2018 Witthar sent Smith an discriminatory email [t]elling Smith to go to another dealership for his vehicle needs.

Any way you look at it, you missed the absolute deadline, and your action must fail. No attempt to amend can provide a cure.

Further, you were ordered to serve all Defendants *and* file all proofs of service by November 5, 2020. We checked the docket and it looks as though you failed to comply with the Court's order in this regard. None of the proofs was filed, and to our knowledge, none of the individual defendants has been served. Please inform us if we are incorrect, as we intend to move for dismissal for these reasons as well (unless you voluntarily dismiss).

Please let us know, in writing, whether you intend to dismiss your complaint against Sanderson Ford in light of the fact that your claims are barred by the statute of limitations. If you are not willing to dismiss the 8/7/20 Complaint, please let us know the basis for it in writing. We will need your response by **November 17, 2020**, so that we can reply accordingly.

EXHIBIT #1    EMAIL #3

Please take note that because we have reached out and provided you with all the authority you need to have to be able to evaluate your alleged facts in the context of the applicable law, Sanderson Ford will seek to recover its reasonable attorneys' fees should you refuse to dismiss the pending complaint, forcing it to file its motion.

Pamela L. Kingsley | Shareholder | 602.255.6015
Employment | Commercial and Business Litigation | Appellate

 **TIFFANY & BOSCO** P.A.

Seventh Floor Camelback Esplanade II | 2525 E Camelback Road | Phoenix, AZ 85016
P 602.255.6000 | F 602.255.0103
plk@tblaw.com | Bio | vCard | Website | Practice Areas

Offices: Offices: Alabama | Arizona | California | Florida | Michigan | Nevada | New Mexico

**CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender or notify her assistant Shari 602.255.6029 and sdh@tblaw.com that you have received the message in error, then delete it. Thank you.

  

EXHIBIT #1 EMAIL #3